# BRODERICK LAW, P.C.

10 Hillside Avenue
Winchester, Massachusetts 01890

Edward A. Broderick

Cell: (617) 680-0049
Tel. (617) 738-7080
ted@broderick-law.com

October 13, 2025

*Via ECF*
The Honorable Jon S. Tigar
Oakland Courthouse, Courtroom 6 – 2nd Floor
1301 Clay Street
Oakland, CA 94612

**Re: Discovery Dispute,** *Strickland v. Sunrun, Inc.***, Civil Action No. 4:23-cv-05034-JD**

Dear Judge Tigar:

Pursuant to Paragraph H of the Court's November 24, 2024 Standing Order, Plaintiff Sherry Strickland ("Ms. Strickland" or "Plaintiff") and Defendant Sunrun, Inc. ("Sunrun" or "Defendant") submit this joint letter regarding a discovery dispute between the Parties. The Parties met and conferred over Microsoft Teams on July 22, 2025, further conferring via email on September 10, 2025 but were unable to further narrow their disagreement.

**<u>Plaintiff's Position</u>**

Defendant has refused to provide discovery on relevant issues other than an indication to providing a "sampling" of affirmative defenses and relevant information for class members identified in Plaintiff's expert report. Under the jointly proposed schedule in this action, discovery closes on November 14, 2025. Plaintiff has to move for class certification following the close of the only discovery period, and the withheld discovery, in its entirety, is crucial to that motion in order to identify ascertainable classes that satisfy the requirements of Fed. R. Civ. P. 23.

Plaintiff filed this case as a putative class action, alleging that in spite of her residential cell phone number being listed on the National Do Not Call Registry since September 2021, in July 2023 she and similarly situated classes of individuals unsolicited telemarketing calls from Sunrun in violation of the Telephone Consumer Protection Act. 47 U.S.C. § 227(c)(5) ("TCPA") Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

The TCPA and FTSA prohibit telemarketing to numbers on the National Do Not Call Registry and the use of prerecorded or autodialed calls absent prior express written consent. These statutes place the burden of proving consent on the caller, not the consumer. *See Van Patten v. Vertical Fitness*, 847 F.3d 1037, 1044 (9th Cir. 2017).

In response to Ms. Strickland's Amended Complaint (ECF 23), Defendant claimed it obtained Ms. Strickland's consent by purchasing a "lead" from Astoria Company, LLC ("Astoria"), alleging that Ms. Strickland had given her "prior express written consent" to receive telemarketing calls from Sunrun by visiting the www.quotewallet.com website and filling out a

The Honorable Jon S. Tigar
Page | 2
Re:  Discovery Dispute, *Strickland v. Sunrun, Inc.*, Civil Action No. 3:23-cv-05034-JD

multipage Web Form offering free quotes on residential Solar energy services. Sunrun argued that disproving whether Ms. Strickland and other class members had consented to the calls prohibited class certification and that her class allegations should be stricken. ECF 26.

Plaintiff denied visiting the site, which in any event misrepresented that visitors undertook "No Obligation. No sales calls or spam." The Court denied Sunrun's motion (ECF 37). In light of the problems with the bogus Astoria "lead" for Ms. Strickland, Plaintiff focused discovery and its expert analysis on leads Sunrun purchased from Astoria. Document discovery has revealed that long before calling Ms. Strickland, Sunrun recognized issues with Astoria leads. In an August 24, 2020 email chain, Andy Worford, a Quality Assurance Manager for Clean Energy Experts, a Sunrun subsidiary wrote to Martin Leatherman of Sunrun, "We talk about the URL Blacklist today on our call, so I have the information to get JP to block those API Calls from like Astoria, etc. I'll CC you on the Ticket." Martin Leatherman, Sunrun's Digital Marketing Manager responded "Thank you! They're like a disease that won't go away." (Produced at SUNRUN-SS-000245-246. Plaintiff's expert Aaron Wolfson performed an analysis of the calling by Sunrun to Astoria leads. Mr. Wolfson's analysis concludes the following totals for members of the subclasses:  4,629 members in the National Do Not Call Class; 7,966 members who had wireless numbers that received a pre-recorded message; there are 577 members of the Florida Do Not Call class; the Florida FTSA pre-record class contains 812 members; the Florida autodialer class under the FTSA contains 1,512 members.

With the potential classes narrowly defined, Plaintiff served a second set of document requests and interrogatories on Sunrun, asking both contention interrogatories and for documents addressing five central issues in the case only as to the potential class members identified in Mr. Wolfson's report: 1). Proof of Consent; 2) Proof that Sunrun had an Established Business Relationship; 3) Proof as to which of the numbers were not wireless when called; 4) Proof that any of the numbers were not residential when called; 5) Proof that any of the numbers in the DNC class were not registered on the National Do Not Call Registry. Sunrun's Response to the Second Set of Document Requests is attached as Exhibit 1, and the Response to Second Interrgoatories as Exhibit 2. As to requests on the five categories, Sunrun provided only information as to Plaintiff and offered a "sampling" of other potential class members.

Defining and certifying classes in a TCPA is frequently an iterative process, excluding members of the potential class as to which a Defendant has raised a possibly valid defense, such as consent or an Established Business Relationship, leaving only those class members whose claims can be resolved on a classwide basis. This was precisely what Plaintiff's counsel did in a case certified last year in the District of Massachusetts. In its Order denying Defendant's Motion to Exclude Plaintiff's Expert and granting Plaintiff's Motion for Class Certification, the Court observed of plaintiff's expert's analysis:

> Her analysis was not an attempt to identify, via a scientific inquiry, all possible phone numbers satisfying subparts (a) to (c) of the proposed Class Definition. Rather, using standard data analysis techniques, she prepared a list, substantially at the direction of counsel for Mantha, of a subset of persons who satisfy the

The Honorable Jon S. Tigar
Page | 3
Re:  Discovery Dispute, *Strickland v. Sunrun, Inc.*, Civil Action No. 3:23-cv-05034-JD

proposed Class Definition, while eliminating potential legal or factual issues by narrowing the Class.

*Mantha v. Quotewizard.Com, LLC*, 347 F.R.D. 376, 385 (D. Mass. 2024). By refusing to produce information about absent class members, Defendant is depriving Plaintiff of the ability to generate a class list for purposes of certifying the class. Given the centrality of the information sought, the relatively small size of the sub-classes and Sunrun's obligation to preserve the information sought, Sunrun should be ordered to withdraw its objection and produce the documents and information sought.

**Defendant's Position**

Far from refusing to produce relevant information, Sunrun proposes to produce information relevant to Plaintiff's claims that does not impose an undue burden on Sunrun.  Plaintiff's discovery requests (the "Requests") seek individualized information and records that would require an unduly burdensome customer-by-customer/phone-number-by-phone-number investigation and response across nearly ten thousand customers/phone numbers.  Because such individualized discovery is disproportionate to the needs of this case and would be impracticable (if not impossible) to provide, Sunrun proposed a sampling approach that has been accepted by other courts but rejected out of hand by Plaintiff.  Plaintiff provides no basis or support for her refusal of sampling, which is not uncommon in TCPA cases, and instead takes an "all or nothing" approach that the Court should reject.[1]

By way of background, Sunrun and Clean Energy Experts, LLC ("Solar America") endeavor only to contact those customers who are genuinely interested in solar products.  Both companies have policies and procedures in place to prevent any unlawful telephone calls, including by requiring evidence of consent/permission to be called from any leads generated from any third-party source.

Evidence of Plaintiff's prior express written consent and/or permission to be called is present here. In the instant case, Solar America called Plaintiff because it received from Astoria Company ("Astoria") a lead containing Plaintiff's contact information and identifying "Sherry Strickland" as the individual inquiring into solar.  Astoria was contractually prohibited from offering leads to Solar America unless the customer had provided the requisite level of consent to be contacted. Solar America obtained that consent through Plaintiff submitting her phone number (providing the lead information) via an Astoria-hosted webform requesting to be called regarding residential solar services.  And Astoria—because they were contractually obligated to—captured evidence of that consent through Jornaya, which is a third-party tool that records details of a consumer's completion

---

[1] *Cf. Diaz-Lebel v. TD Bank USA, N.A.*, No. CV 17-5110 (MJD/BRT), 2018 WL 4145912, at *3 (D. Minn. Aug. 30, 2018) (where TCPA plaintiff sought class-wide data rather than a reasonable sample, explaining: "In the end, Plaintiff framed this as an 'all or nothing' motion.  The discovery demanded in the request at issue is burdensome and not proportional to the needs of the case.  This Court could easily justify denying Plaintiff's 'all' and give her 'nothing.'" (citation omitted)).

The Honorable Jon S. Tigar
Page | 4
**Re:  Discovery Dispute, *Strickland v. Sunrun, Inc.*, Civil Action No. 3:23-cv-05034-JD**

of a webform to validate consent.[2]  Plaintiff like many prospective customers, completed multiple web forms over the years prior to her submission through the webform provided by Astoria.  This is not atypical because many customers take time and shop around when considering whether to purchase a solar system.  When CEE called Plaintiff on prior occasions (not at issue in this lawsuit) in response to her completion of a similar webform, the conversations with Plaintiff corroborated that she had made inquiries about solar.

In addition, the webform submission from Plaintiff suggests that it was, in fact, Plaintiff who completed the webform.  Each webform submission is associated with a unique identification number, which in turn is associated with Jornaya records that validate the capture of consent.  The Jornaya records indicate that the webforms submitted by Plaintiff were submitted from IP addresses located near her home and/or place of work.  Thus, the entire profile of Plaintiff's records indicate she did, in fact, provide her phone number and permission to be called by Solar America.

Despite the evidence already produced in discovery by Sunrun and CEE, Plaintiff claims that she did not complete the webform at issue.  And, in discovery, Plaintiff now seeks all of the records that pertain to or corroborate the consent (or inquiry or established business relationship) of approximately 10,000 other prospective customers that completed similar web forms to obtain information about solar from CEE or Sunrun.

The Court should reject Plaintiff's attempt to compel responses to the Requests for four reasons: (1) they run counter to the purposes served by a class action; (2) they are extremely burdensome; (3) certain of the information requested is not maintained in the ordinary course of business, but rather is the proper subject of expert testimony; and (4) the parties should litigate the validity of Plaintiff's individual claims prior to engaging in burdensome class discovery.

*First*, the Requests negate the purpose of a class action.  Producing records for every individual in a putative class is not "generalized proof" and does not remotely serve the purpose of a class action; instead, Plaintiff effectively asks for Sunrun to disprove the claims of thousands of individuals during the discovery phase of this case.  This individualized inquiry precludes class certification.

*Second*, responding to Plaintiff's requests would be extraordinarily burdensome, if not impossible within the discovery period in this case.  Sunrun estimates that the process to obtain the requested information would take roughly **one hour per phone number** to complete, and, accordingly, approximately **9,945 hours** for all phone numbers.  Obtaining the requested information would include a multi-step manual process to search for and obtain various records associated with each phone number.  Sunrun would need to: (i) identify each lead (e.g., the information received through a consumer's webform submission(s)) associated with a given phone number; (ii) obtain (from a

---

[2] A Jornaya report provides evidence of a consumer's website lead submission for TCPA compliance purposes, including a virtual playback of the webform submission, date of submission, the IP address associated with the submission and the TCPA disclosure statement agreed to at the time of submission.  Jornaya reports are created through a service provided by a third-party entity.  Sunrun must request the reports from the service provider.  It can take up to several days or up to two weeks for the service provider to respond to the request depending on the volume.

Case 4:23-cv-05034-JST     Document 65     Filed 10/13/25     Page 5 of 6

The Honorable Jon S. Tigar
Page | 5
**Re:  Discovery Dispute, *Strickland v. Sunrun, Inc.*, Civil Action No. 3:23-cv-05034-JD**

third party) the Jornaya records for those leads; (iii) generate a log of the phone calls made to the phone number; (iv) obtain the recordings of those calls; and (v) review Sunrun's and Solar America's files for any communications and/or other agreements, including whether the lead was ultimately sold to one of Solar America's partners or became a customer of Sunrun.

The records establishing Plaintiff's consent are illustrative of the burden Sunrun would face for a given phone number and the degree of individualized evidence bearing on consent for a given phone number.  Indeed, beyond submitting multiple webforms (like many consumers) and thus requiring Sunrun to obtain Jornaya records for each such submission, Plaintiff's consent is further established by, for example, call recordings and IP addresses consistent with Plaintiff's webform submissions and consent.  When confronted with similarly onerous requests, where manual retrieval of information would be disproportionately time-consuming and burdensome, courts repeatedly deny motions to compel.  *See*, *Yazdi v. Aetna Life & Cas. (Bermuda) Ltd.*, No. 2:18-cv-8345, 2019 WL 6719535, at *2, *8 (C.D. Cal. Sept. 9, 2019) (collection would take at least ten minutes per file and a minimum of 330 hours to complete); *Dobro v. Allstate Ins. Co.*, No. 3:16-cv-1197, 2016 WL 4595149, at *6–7 (S.D. Cal. Sept. 2, 2016) (collection would be "oppressive" where it would require defendants "to perform a claim by claim review" that would "take at least three minutes per claim").  Sampling may be employed to avoid the undue burden of class-wide discovery. "As this court has discussed previously in the specific context of class-action discovery, sampling advances the goal of proportionality set forth in Fed. R. Civ. P. 26(b)(3)(c)(iii)." *Feske v. MHC Thousand Trails Ltd. P'ship*, No. 11-cv-4124-PSG, 2012 WL 1123587, at *2 (N.D. Cal. Apr. 3, 2012); *see also Nece*, 2018 WL 1072052 at *1, *3–4 (denying discovery where TCPA plaintiff sought all consent-related records "[r]ather than request a reasonable sample").  Thus, "[t]o relieve the burden on a party, a court may order a 'sampling' of records." *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 503 (E.D. Cal. 2012) (citation omitted).

*Third*, Plaintiff's Requests for Sunrun to identify whether each of the 9,945 was not a wireless number or not on the National Do Not Call Registry is improper because such information relates to elements of Plaintiff's claim and is not maintained by Sunrun in the ordinary course of business and calls for expert testimony with respect to the historical categorization of each phone number.

And, *finally*, the merits of Plaintiff's individual claims should be decided before undertaking burdensome class discovery.  Indeed, the decision Plaintiff points to—*Mantha v. Quotewizard.Com, LLC*, 347 F.R.D. 376, 385 (D. Mass. 2024), concerns a *Daubert* challenge, not the discovery issues presented here—was entered in a case where the court bifurcated discovery to deal with the merits of Plaintiff's individual claim first.  *Id.* at 382. Dispositive motions are scheduled to be heard on March 5, 2026, before Plaintiff's deadline to move for class certification on March 30, 2026.  (ECF No. 63 at 2-–3.)  Sunrun plans to move for summary judgment— including on the basis that Plaintiff consented to the calls at issue.  If the Court grants that dispositive motion, the Requests will be mooted entirely.

Accordingly, Sunrun submits that the Court should: (1) deny Plaintiff's request to compel discovery; (2) order that a reasonable sampling of records be permitted; and (3) stay class discovery until there is a decision on Sunrun's forthcoming motion for summary judgment.

The Honorable Jon S. Tigar
Page | 6
**Re:  Discovery Dispute, *Strickland v. Sunrun, Inc.*, Civil Action No. 3:23-cv-05034-JD**


Respectfully submitted,

| | |
|---|---|
| */s/ Edward A. Broderick* | */s/ Glenn T. Graham* |
| Broderick Law, P.C. | Glenn T. Graham |
| 10 Hillside Avenue | Kelley Drye & Warren LLP |
| Winchester, MA 01890 | 7 Giralda Farms, Suite 340 |
| [o] 617-738-7080 | Madison, NJ 07940 |
| [f] 617-830-0327 | [o] (973) 503-5900 |
| ted@broderick-law.com | [f] (973) 503-5950 |
| | ggraham@kelleydyre.com |
| | |
| */s/ Anthony I. Paronich* | */s/Lauri A. Mazzuchetti* |
| Anthony I. Paronich | Kelley Drye & Warren LLP |
| Paronich Law, P.C. | 7 Giralda Farms, Suite 340 |
| 350 Lincoln Street, Suite 2400 | Madison, NJ 07940 |
| Hingham, MA 02043 | [o] (973) 503-5910 |
| [o] (617) 485-0018 | [f] (973) 503-5950 |
| [f] (508) 318-8100 | lmazzuchetti@kelleydrye.com |
| anthony@paronichlaw.com | |


## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated: October 13, 2025                             */s/ Edward A. Broderick*
                                                                        Edward A. Broderick