**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice*)
Glenn T. Graham (SBN 338995)
Emily E. Clark (*pro hac vice*)
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
ggraham@kelleydrye.com
eclark@kelleydrye.com

*Attorneys for Defendant Sunrun Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERRY STRICKLAND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRUN INC.<br><br>Defendant. | Case No. 4:23-cv-05034-JST<br><br>[Assigned to Hon. Jon S. Tigar]<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE SHARON WASHINGTON, PERSONAL REPRESENTATIVE FOR SHERRY STRICKLAND, AS PLAINTIFF**<br><br>**[Declaration of Glenn T. Graham filed concurrently herewith]**<br><br>Hearing Date: January 28, 2027<br><br>Time: 2:00 PM<br>Location: Courtroom 6, 2nd Floor |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION & RELEVANT BACKGROUND ........ 1
II. BACKGROUND ........ 5
A. The Complaint ........ 5
B. Plaintiff's Number Was Submitted Through Several Webforms, the Circumstances of Which Warrant Further Investigation ........ 5
C. Plaintiff's Incomplete Deposition Raises More Questions ........ 6
D. The Motion to Substitute ........ 7
III. LEGAL STANDARD ........ 7
IV. ARGUMENT ........ 8
A. Washington Cannot Pursue the FTSA Claim, Injunctive Relief, Treble Damages, or Class Claims ........ 8
1. Claims for Treble Damages, Injunctive Relief and Under the FTSA Have Been Extinguished or Abandoned ........ 8
2. Substitution to Pursue Class Claims Would Be Futile ........ 10
a. Washington Cannot Satisfy Typicality ........ 11
b. Washington Cannot Satisfy Adequacy ........ 12
B. Any Substitution Should Be Limited and Conditioned, with Class Discovery Stayed Pending Summary Judgment ........ 14
V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAT Bioquest, Inc. v. Texas Fluorescence Lab'ys, Inc.*,
No. 4:14-CV-03909, 2015 WL 1738402 (N.D. Cal. Apr. 13, 2015) .................................. 9–10

*Bailey v. Cumberland Cas. & Sur. Co.*,
180 F. App'x 862 (11th Cir. 2006)........................................................................... 10–11

*Bailey v. MacFarland*,
No. 2:15-cv-01725, 2020 WL 5763825 (E.D. Cal. Sept. 28, 2020)......................................... 8

*Baker v. Aegis Wholesale Corp.*,
No. 4:09-cv-05280, 2010 WL 2853915 (N.D. Cal. July 21, 2010)........................................ 10

*Banks v. Sunrun*,
4:24-cv-07877-JST (N.D. Cal.).................................................................................. 3

*Berman v. Freedom Financial Network, LLC*,
400 F. Supp. 3d 964 (N.D. Cal. 2019) ........................................................................ 12

*Borteanu v. Nikola Corp.*,
348 F.R.D. 239 (D. Ariz. 2025) ................................................................................ 14

*Burrus v. Elevance Health, Inc.*,
No. 2:22-cv-09433, 2023 WL 8896902 (C.D. Cal. Oct. 24, 2023)........................................... 8

*E.E.O.C. v. Timeless Invs., Inc.*,
734 F. Supp. 2d 1035 (E.D. Cal. 2010)........................................................................ 8

*Garcia v. Lane Bryant, Inc.*,
No. 1:11-cv-01566, 2012 WL 293544 (E.D. Cal. Jan. 31, 2012) .......................................... 10

*Gorsey v. I.M. Simon & Co.*,
No. 1:86-cv-01875, 1990 WL 113606 (D. Mass. Aug. 1, 1990) ............................................. 8

*Gravelle v. Kiander*,
No. 2:13-cv-01911, 2016 WL 194741 (W.D. Wash. Jan. 15, 2016) ............................... 14–15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1999).................................................................................. 12

*Hannabury v. Hilton Grand Vacations Co.*,
174 F. Supp. 3d 768 (W.D.N.Y. 2016) ..................................................................... 9, 11

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)................................................................................ 11–13

# TABLE OF AUTHORITIES

**Page(s)**

*Hawes v. Johnson & Johnson*,
940 F. Supp. 697 (D.N.J. 1996) ... 8

*Hilao v. Estate of Marcos*,
103 F.3d 762 (9th Cir. 1996) ... 8

*Kennerly v. United States*,
721 F.2d 1252 (9th Cir. 1983) ... 9, 11

*Kettner v. Compass Grp. USA, Inc.*,
570 F. Supp. 2d 1121 (D. Minn. 2008) ... 8

*Malverty v. Equifax Info. Servs., LLC*,
407 F. Supp. 3d 1257 (M.D. Fla. 2019) ... 8

*Margulies v. Tri-County Metropolitan Transportation District of Oregon*,
No. 3:13-cv-00475, 2014 WL 12918938 (D. Or. Dec. 23, 2014) ... 14

*May v. Gladstone*,
562 F. Supp. 3d 709 (C.D. Cal. 2021) ... 14

*Mehaffey v. Navient Sols., LLC*,
544 F. Supp. 3d 1128 (D. Colo. 2021) ... 9

*Moyer v. Cellura*,
No. 5:23-cv-03004, 2025 WL 3707247 (N.D. Cal. Dec. 22, 2025) ... 7–8

*Parchman v. SLM Corp.*,
896 F.3d 728 (6th Cir. 2018) ... 9

*Pierre v. Debbie's Staffing Servs., Inc.*,
No. 3:15-cv-00089, 2017 WL 11681686 (S.D. Iowa Jan. 24, 2017) ... 8, 10, 14

*Puckett v. Granite Designs, LLC*,
No. 4:22-cv-00403, 2025 WL 2083828 (D. Id. 2025) ... 9

*Rashley v. Boost Health Insurance Agency*,
No. 1:25-cv-21690-KMW (S.D. Fla.) ... 4, 10

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ... 13

## TABLE OF AUTHORITIES

**Page(s)**

*Strickland v. MPX Ins. Servs., Inc.*,
No. 9:23-cv-81305 (S.D. Fla.) ........ 1, 2, 4, 6

*In re: Subpoena to the Heidarpour Law Firm, PLLC*,
No. 6:26-mc-0830 (D. Or.) ........ 3–4, 6

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) ........ 9

*Tosti v. City of Los Angeles*,
754 F.2d 1485 (9th Cir. 1985) ........ 10

*Velazquez v. GMAC Mortg. Corp.*,
No. 2:08-cv-05444, 2009 WL 2959838 (C.D. Cal. Sept. 10, 2009) ........ 9

*Wilson v. Freeway Insurance Services of America, LLC*,
No. 6:25-cv-1869 (D. Or.) ........ 3–6

**Statutes**

Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ........ 1, 5, 8–9

Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ........ *passim*

**Other Authorities**

Civil Local Rule 3-15 ........ 3

Fed. R. Civ. P. 23 ........ *passim*

Fed. R. Civ. P. 25 ........ *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION & RELEVANT BACKGROUND

Following the death of Plaintiff Sherry Strickland ("Plaintiff"), Plaintiff's counsel asks the Court to substitute her daughter, Sharon Washington ("Washington"), as plaintiff.[1] Sunrun does not oppose substitution to the limited extent necessary to permit Washington to pursue any surviving individual claims for statutory damages under the Telephone Consumer Protection Act ("TCPA"). But substitution cannot preserve claims that did not survive Plaintiff's death, and it certainly cannot transform Washington into the putative class representative described in the operative complaint. At most, Washington may pursue Plaintiff's surviving individual TCPA claims. The class claims, in particular, should not go forward.

As to the specific claims, the Motion addresses, briefly, only the TCPA claims. It does not mention the Florida Telephone Solicitation Act ("FTSA") claims or address why the class claims should survive, both of which should be deemed abandoned. Moreover, Washington cannot pursue extinguished claims. Plaintiff's claims for treble damages are penal and do not survive, and her request for injunctive relief is moot. This leaves only individual claims for statutory TCPA damages.

The putative class allegations present a separate and more fundamental problem. The operative complaint alleges that Plaintiff's claims are typical of the proposed classes, that Plaintiff "will fairly and adequately protect the class's interests," and that she "is represented by counsel skilled and experienced in litigating class actions," and it asks the Court to appoint Plaintiff as class representative and her counsel as class counsel. (ECF No. 54 ¶¶ 57–58.) Those allegations were personal to Plaintiff, and the record now shows they were never true even as to her.

Plaintiff's theory rests on her assertion that she never submitted a July 8, 2023 solar webform containing her identifying information that preceded the calls at issue. Yet only fourteen days earlier, on June 24, 2023, Plaintiff's same identifying information was submitted through an unrelated insurance website, generating other allegedly unsolicited calls and another putative TCPA

[1] Unless otherwise indicated, "Motion" or "Mot." refers to the substitution motion (ECF No. 97) and internal citations and quotation marks are omitted.

class action, *Strickland v. MPX Ins. Servs., Inc.*, No. 9:23-cv-81305 (S.D. Fla.) ("*MPX*"), which Plaintiff ultimately settled. Plaintiff denied submitting that form as well and executed an affidavit in *MPX* asserting that the originating IP address could not have been hers because her IP address began with "174." (*Id.* at ECF No. 20-1.)

Discovery in this case tells a different story. The June 24 MPX submission and the July 8 solar submission originated from the exact same IP address, beginning with "98." That address was associated with a Comcast customer in Lake City, Florida, where Plaintiff resides, and Plaintiff herself testified that she is a Comcast/Xfinity subscriber for her home internet service. Moreover, an earlier solar submission bearing Plaintiff's information originated from a "174" IP address closely corresponding to the "174" addresses associated with Plaintiff's Samsung Galaxy both when she prepared her *MPX* affidavit and when she performed the same IP-address lookup during her deposition. (*See* Declaration of Glenn Graham ("Graham Decl.") Ex. 2, ("Strickland Tr."), at 104:16–105:24.)

Two disputed lead submissions, fourteen days apart, bearing Plaintiff's information and originating from the exact same IP address associated with Plaintiff's ISP provider, each followed by allegedly unsolicited calls and a TCPA lawsuit, together with a separate solar submission originating from the same cellular network ranges associated with Plaintiff's own device, point to a common source: Plaintiff, her household, or someone with access to her information. Plaintiff acknowledged that she had several computers in her home and testified that it was possible that one of her daughters completed the forms. Unfortunately, Sunrun's examination of Plaintiff was cut short before these issues could be fully explored, and despite Sunrun's efforts to reschedule, the deposition was never completed before Plaintiff's death. Washington cannot replace Plaintiff's firsthand knowledge of those events.

Further, Washington did not receive the calls, lacks firsthand knowledge of the circumstances giving rise to Plaintiff's claims, was estranged from Plaintiff, and is herself implicated in the webform submissions at the center of this case. She cannot inherit Plaintiff's asserted typicality and adequacy through substitution. Nor can Washington pursue the same relief sought on behalf of the putative classes, including treble damages and injunctive relief. Because no

class has been certified, ending the class allegations now would prejudice no absent class member.

The circumstances surrounding counsel's involvement reinforce adequacy and typicality issues. Plaintiff testified that she first contacted the Heidarpour Law Firm ("HLF") in July 2023 but could not identify when during that month, leaving unresolved whether that relationship began before or after the July 8 submission. She principally recalled dealing with Farideh Heidarpour, who instructed Plaintiff concerning the IP-address inquiry later used to dispute the lead evidence and to whom Plaintiff provided information concerning her Xfinity account.

The pattern of non-disclosure by Plaintiff's counsel reinforces those concerns. Andrew Heidarpour and HLF were involved in this action from its inception, yet Plaintiff's counsel did not identify them as persons with an interest in this action under Civil Local Rule 3-15 until October 20, 2026 (ECF No. 96), more than three years after filing, after this failure was expressly raised in *Banks v. Sunrun*, 4:24-cv-07877-JST (N.D. Cal.), and on the very day the Motion was filed. The same thing happened in *Banks*, the competing TCPA class action against Sunrun pending before this Court. Sunrun learned that Anthony Paronich, lead counsel here, had been retained before suit in *Banks* giving his firm an equal share of any fees—an interest not disclosed until September 10, 2026. This Court found that it appeared the *Banks* plaintiff had "withheld relevant information during the fact discovery period," specifically citing the failure to disclose Paronich's role and financial interest, concluded that the explanation offered did "not sufficiently explain this failure to disclose," and reopened fact discovery. (*Banks*, ECF No. 76.) The same lawyers have now twice concealed who stands behind a putative class action before this Court until the concealment could no longer be maintained. That left Sunrun and the Court without a complete or accurate picture of the overlapping counsel and financial interests behind two competing class actions.

These circumstances mirror what is now being investigated in the District of Oregon. In *Wilson v. Freeway Insurance Services of America, LLC*, No. 6:25-cv-1869 (D. Or.), and the related *In re: Subpoena to the Heidarpour Law Firm, PLLC*, No. 6:26-mc-0830 (D. Or.), the court ordered "robust discovery to determine exactly what is going on with the Heidarpour Law Firm." Tr. of Aug. 19, 2026 Hearing, *Wilson*, ECF No. 49 at 78:22–23. That discovery has produced evidence that an HLF client signed his HLF retainers from the same IP address that signed his number up for

the messages he sued over; that opt-ins using HLF clients' numbers nearly doubled while they were represented by HLF and fell back once fraud was raised; and that another HLF claimant, represented by HLF's Dana Oliver (counsel of record here), blamed his estranged mother for the disputed sign-up and then dismissed with prejudice once the court permitted her deposition and a forensic examination of his devices. In *Rashley v. Boost Health Insurance Agency*, No. 1:25-cv-21690 (S.D. Fla.), two HLF clients for whom Mr. Oliver sent pre-suit demands were defaulted on fraud counterclaims after recordings showed fabricated web submissions.[2] Freeway's counsel describes the model directly: a demand from HLF, a putative class action filed by referral counsel (including Paronich Law), and use of the class allegations as leverage for an individual settlement. The parallels here are unmistakable: an opt-in IP address that ties two of Plaintiff's TCPA claims together, Farideh Heidarpour's control of Plaintiff's accounts and IP lookups, the same referral counsel, the prior individual recovery in *MPX*, and a plaintiff who, when confronted with the lead records, blamed her daughters, one of whom is now the proposed substitute.

No class has been certified, but the class allegations are not costless. They carry substantial discovery burdens and the corresponding settlement pressure that, on the *Wilson* record, is the very point of these suits. Rule 25 gives the Court discretion over whether, and to what extent, substitution is appropriate, and that discretion should not be exercised to hand class allegations to a substitute who lacks firsthand knowledge of the underlying events, is entangled in the disputed webforms, and

---

[2] Plaintiff's counsel in *MPX*, Avi R. Kaufman and Rachel E. Kaufman of Kaufman P.A., litigated her claim that she had not submitted the disputed lead form, including by filing her affidavit denying that the originating IP address was hers, before dismissing her claims with prejudice. *See MPX*, ECF Nos. 1, 20, 29. Kaufman P.A. is one of HLF's principal referral firms and also represented HLF-referred plaintiffs in *Rashley v. Boost Health Insurance, Inc.*, No. 1:25-cv-21690 (S.D. Fla.); *In re: Subpoena to the Heidarpour Law Firm, PLLC*, No. 6:26-mc-00830, ECF No. 34 at 9 n.3 (D. Or. Nov. 6, 2026). In *Rashley*, two HLF clients likewise denied requesting the marketing communications at issue, but session recordings showed their information being submitted under false names, with altered location data and VPN-masked visits. *Rashley*, ECF No. 14 ¶¶ 27–29, 39, 75, 85. The plaintiffs then submitted identical declarations attempting to corroborate their claims by swearing that they did not know each other, yet phone records revealed sixty-five calls between them, as well as fifty-one calls between one plaintiff and HLF shortly before HLF claimed to have retained him. *In re: Heidarpour*, ECF No. 34 at 9–10. Court-ordered forensic imaging subsequently revealed a factory-reset phone and information "intentionally deleted" after suit was filed. Counsel withdrew, default was entered against both plaintiffs on the defendant's fraud counterclaims, and, according to Freeway, Judge Williams indicated that she would refer the lawyers involved, including HLF attorneys Mr. Heidarpour and Dana Oliver, to the Florida Bar. *Id.*

is represented by counsel who have repeatedly failed to disclose who stands behind these cases. Washington cannot legitimately stand behind the allegations that Plaintiff was typical and adequate.

Sunrun therefore respectfully requests that the Court permit Washington to substitute only as to any surviving individual TCPA claims for statutory damages and deny substitution as to the remaining claims, remedies, and putative class allegations. Substitution under Rule 25 may preserve Plaintiff's surviving individual claims, but it should not transfer to Washington Plaintiff's personal and untested claim to represent a putative class. Any order permitting substitution should also preserve Sunrun's ability to take targeted discovery into the role of Plaintiff's counsel, including HLF, and the origin of Plaintiff's claims, consistent with the approach taken by the *Wilson* court.

## II. BACKGROUND

### A. The Complaint

Plaintiff, a Florida resident, filed this putative class action against Sunrun in 2023. (ECF No. 1.) The operative Second Amended Complaint ("SAC"), filed March 27, 2025, asserts four counts: (1) violation of the FTSA's autodialer provision, Fla. Stat. § 501.059(8)(a); (2) violation of the FTSA's do-not-call provisions; (3) violation of the TCPA's National Do Not Call Registry ("NDNCR") provision, 47 U.S.C. § 227(c); and (4) violation of the TCPA's prerecorded-voice provision, 47 U.S.C. § 227(b). (ECF No. 54.) Plaintiff alleges that she registered her number on the NDNCR in September 2021 and that she received calls between July 8 and July 14, 2023. (*Id.* ¶¶ 27–29.) She seeks statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief, on behalf of herself and putative nationwide and Florida classes. (*Id.* at 15 (Prayer ¶ H).) No class has been certified.

### B. Plaintiff's Number Was Submitted Through Several Webforms, the Circumstances of Which Warrant Further Investigation

Sunrun's former subsidiary, Clean Energy Experts, LLC ("Solar America"), received Plaintiff's information through several webform submissions between 2019 and 2023 inquiring about solar energy. (Graham Decl. Ex. 1, Sunrun's Am. Resp. to Interrog. Nos. 2, 6.) The IP data triangulates on Plaintiff. The July 8, 2023 submission came from the same IP address, [redacted], as the June 24, 2023 opt-in at issue in Plaintiff's prior TCPA putative class action,

*MPX*, from which Plaintiff (and presumably her counsel) received a settlement. (Strickland Tr. at 106:9–110:8, 115:13–23.) The March 29, 2020 submission came from an IP address beginning with 174, the same leading digits Plaintiff attributed to her own IP address in her *MPX* affidavit, and the April 14, 2023 solar submission came from [redacted], numerically clustered with the 174.212 addresses Plaintiff displayed when preparing her *MPX* affidavit and again during her deposition. (*Id.* at 85:8–10, 164:19–165:11.)[3]

**C. Plaintiff's Incomplete Deposition Raises More Questions**

Sunrun began Plaintiff's deposition on November 10, 2025. Plaintiff testified that she gave Mr. Heidarpour and his assistant her Xfinity and Comcast login credentials (*id.* at 48:11–15, 183:12–16); and that the assistant helped her obtain IP-address information (*id.* at 86:13–23, 104:9–12). Sunrun has since learned that the "assistant" is Farideh Heidarpour, Mr. Heidarpour's mother, who is a convicted felon on fraud charges. (*See* Graham Decl. ¶ 7.) Since then, proceedings in *Wilson* have compelled discovery to investigate allegations and substantial questions regarding whether and/or how HLF and associated counsel, including Plaintiff's counsel here, generated, controlled, and monetized TCPA claims brought in their clients' names. The *Wilson* court denied class certification, denied the plaintiff's request for voluntary dismissal, and ordered further discovery. *Wilson*, ECF No. 47; *see also In re: Subpoena to the Heidarpour Law Firm, LLP*, No. 6:26-mc-0830 (D. Or.). Only after those developments did Plaintiff's counsel of record identify Mr. Heidarpour and HLF as persons with a financial interest in this action. (ECF No. 96.)

Critically, when confronted with the webform submissions, Plaintiff pointed to her daughters and could not rule out that one of them submitted the webforms. When confronted with the *MPX* opt-in, Plaintiff testified that her daughter "has my information" and, asked whether her daughter may have populated that form, answered, "I do not know." (Strickland Tr. at 111:16–112:3.) Plaintiff asked whether she could "ask Sharon and Audrey if they did anything with [her] name,"

---

[3] A 2019 submission carried a Samsung Galaxy device signature, the brand Plaintiff testified she had always used. (Strickland Tr. at 104:13–15, 162:7–12.) And two 2020 submissions came from IP addresses that geolocate to Jacksonville, Florida, where Washington has lived since approximately 2016 and where Plaintiff placed herself in 2020. (*Id.* at 166:15–167:12, 167:22–168:24, 177:2–9.)

and her counsel told her to "just wait." (*Id.* at 187:9–20.)

That testimony goes to the heart of the permission to call issue, as well as Plaintiff's ability to satisfy Rule 23, but the deposition was adjourned at Plaintiff's request and never completed. (*Id.* at 185:13–14, 187:3–5, 188:6–7; Graham Decl. ¶¶ 4–5; *see also* ECF No. 99.) Plaintiff asked to "finish this up tomorrow." (*Id.* at 185:13–14, 187:3–5.) Sunrun's counsel noted on the record "that the deposition is remaining in progress," and the parties agreed to reconvene the following afternoon at 3:30. (*Id.* at 187:3–5.) The continued session did not go forward (due to Plaintiff's unavailability), (*see* ECF No. 99), and thereafter the Parties attempted to schedule the continuation of Plaintiff's deposition. (*See* Graham Decl. ¶ 5.) Plaintiff died on December 17, 2025. (ECF No. 94-1 ¶ 2.) Yet Plaintiff's counsel did not inform the Court until April 10, 2026, nearly four months later. (ECF No. 92.) In the interim and before alerting Sunrun's counsel, Plaintiff's counsel joined two stipulations, filed January 9 and February 20, 2026, extending case deadlines on the stated ground that the parties required "a continued deposition of Plaintiff due to Plaintiff's personal timing constraints." (ECF No. 84-1 ¶ 3; ECF No. 87-1 ¶ 3.) Unbeknownst to Sunrun, Plaintiff had already died when both were filed. As a result, Sunrun was never able to follow up with Plaintiff about which daughter or daughters may have submitted the forms, when, from what devices or IP addresses, or with what authority.

### D. The Motion to Substitute

On October 20, 2026, Plaintiff's counsel filed the Motion, asking the Court to substitute Washington in her capacity as personal representative of Plaintiff's estate. (ECF No. 97.) The Motion states that Washington was appointed personal representative by the Circuit Court for the Third Judicial Circuit in and for Columbia County, Florida, has retained Plaintiff's counsel, "has been advised of her responsibilities in serving as a putative class Plaintiff," and "is prepared and willing to serve." (*Id.* at 2.) It does not offer a declaration from Washington or anyone else.

## III. LEGAL STANDARD

In a substitution motion under Rule 25(a)(1), the movant must establish that (1) the motion is timely, (2) the claims pled have not been extinguished, and (3) the person sought to be substituted is a proper party. *See Moyer v. Cellura*, No. 5:23-cv-03004, 2025 WL 3707247, at *2 (N.D. Cal.

Dec. 22, 2025). Once substituted, the new party "steps into the same position as [the] original party." *Hilao v. Estate of Marcos*, 103 F.3d 762, 766 (9th Cir. 1996); *Moyer*, 2025 WL 3707247, at *2. Rule 25(a)(1) is permissive, providing that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." Fed. R. Civ. P. 25(a)(1). Accordingly, courts may consider additional factors in exercising discretion, including prejudice to the nonmovant. *Burrus v. Elevance Health, Inc.*, No. 2:22-cv-09433, 2023 WL 8896902, at *4 (C.D. Cal. Oct. 24, 2023). Courts may also consider futility and whether the proposed new party meets the typicality and adequacy requirements of Rule 23(a) to serve as a class representative. *See, e.g.*, *Pierre v. Debbie's Staffing Servs., Inc.*, No. 3:15-cv-00089, 2017 WL 11681686, at *2 (S.D. Iowa Jan. 24, 2017); *Gorsey v. I.M. Simon & Co.*, No. 1:86-cv-01875, 1990 WL 113606, at *1–2 (D. Mass. Aug. 1, 1990).

## IV. ARGUMENT

### A. Washington Cannot Pursue the FTSA Claim, Injunctive Relief, Treble Damages, or Class Claims

#### 1. Claims for Treble Damages, Injunctive Relief and Under the FTSA Have Been Extinguished or Abandoned

Plaintiff seeks treble damages under the TCPA in the form of $1,500 per "knowing or willful violation." Under federal common law, claims seeking penal rather than remedial relief are extinguished at death. *Bailey v. MacFarland*, No. 2:15-cv-01725, 2020 WL 5763825, at *3 (E.D. Cal. Sept. 28, 2020). Even if a claim is brought under a remedial statute, its penal component abates. *See E.E.O.C. v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1057 (E.D. Cal. 2010) (granting in part motion to substitute and entering summary[4] judgment on liquidated damages aspect of claim only due to its penal nature).

---

[4] *Accord, e.g.*, *Malverty v. Equifax Info. Servs., LLC*, 407 F. Supp. 3d 1257, 1269 (M.D. Fla. 2019) (FCRA punitive-damages claim "is penal by nature and does not survive the death of a party" even if the FCRA is remedial); *Kettner v. Compass Grp. USA, Inc.*, 570 F. Supp. 2d 1121, 1134 (D. Minn. 2008) (substituted plaintiff "entitled to all available remedies under the ADA and Rehabilitation Act," which are remedial statutes, "except for liquidated or punitive damages"); *Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 703–04 (D.N.J. 1996) (denying motion to substitute as to penal aspects of statutory claims).

Damages that rise with the defendant's culpability, rather than the plaintiff's injury, are penal in nature. The TCPA's treble damages provision, which applies only to willful or knowing violations, is such a penal remedy. *See* 47 U.S.C. § 227(b)(3)(C), (c)(5)(C); *Mehaffey v. Navient Sols., LLC*, 544 F. Supp. 3d 1128, 1136 (D. Colo. 2021) ("[T]reble damages provisions of the TCPA are the functional equivalent of punitive damages."). "The very idea of treble damages," as the Supreme Court has explained, "reveals an intent to punish past, and to deter future, unlawful conduct." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981).

Even *Parchman*, on which the Motion relies, acknowledged that the treble damages provision "is more likely disproportionate" and "leans at least in part toward finding that TCPA claims are penal." *Parchman v. SLM Corp.*, 896 F.3d 728, 740 (6th Cir. 2018). *Parchman* held that TCPA claims survive because the statute is predominantly remedial, but it did not hold that the culpability-based treble-damages enhancement necessarily survives once the plaintiff has died. *Id.* at 740–41; *see also Hannabury v. Hilton Grand Vacations Co.*, 174 F. Supp. 3d 768, 776 (W.D.N.Y. 2016) (finding that the TCPA is penal in nature and that all TCPA damages claims abated at death). Accordingly, substitution is not available to pursue treble damages.

Separately, the SAC also seeks injunctive relief. (ECF No. 54 ¶¶ 67, 76, 81, 89; *id.* at 15 (Prayer ¶ F).) Once a plaintiff seeking an injunction dies, "the question of injunctive relief as to him is now moot," *Kennerly v. United States*, 721 F.2d 1252, 1260 (9th Cir. 1983), removing subject matter jurisdiction over that claim. *Velazquez v. GMAC Mortg. Corp.*, No. 2:08-cv-05444, 2009 WL 2959838, at *3 (C.D. Cal. Sept. 10, 2009) (distinguishing between "the *addition* of named plaintiffs *after* class certification, rather than the *substitution* of named plaintiffs *before* class certification" where named plaintiff's claim is mooted) (emphasis in original). The rule applies with full force under the TCPA, because "an injunction prohibiting [the defendant] from making calls to Plaintiff in the future no longer benefits him or the estate." *Hannabury*, 174 F. Supp. 3d at 776–77. Any request for injunctive relief is moot.

Further, the Motion does not seek to substitute Washington as plaintiff with respect to the FTSA claims. Accordingly, those claims have been abandoned. *See e.g.*, *Puckett v. Granite Designs, LLC*, No. 4:22-cv-00403, 2025 WL 2083828, at *1 (D. Id. 2025); *AAT Bioquest, Inc. v.*

*Texas Fluorescence Lab'ys, Inc.*, No. 4:14-CV-03909, 2015 WL 1738402, at *7 (N.D. Cal. Apr. 13, 2015) ("It is well established in this Circuit that claims which are not addressed in the . . . brief are deemed abandoned") (alteration in original).

**2. Substitution to Pursue Class Claims Would Be Futile**

The Court need not ignore the futility of granting leave for Washington to pursue class claims that will not be certified. *Pierre*, 2017 WL 11681686, at *2 (denying substitution due to inability of estate to represent class). Futility is a common-sense consideration in the Court's exercise of discretion. *Garcia v. Lane Bryant, Inc.*, No. 1:11-cv-01566, 2012 WL 293544, at *3–4 (E.D. Cal. Jan. 31, 2012) (denying leave to substitute named class representative, explaining "leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal").

The circumstances here make continued prosecution of class claims untenable. Discovery has raised serious questions about the merits and genesis of Plaintiff's own claims, and Plaintiff's death leaves her unable to answer them. The July 8 solar webform Plaintiff denied submitting originated from the same IP address as the lead form underlying her similar TCPA claims in *MPX*. In that case, Plaintiff was represented by Kaufman P.A., HLF referral counsel whose involvement in *Rashley* and relationship with HLF are detailed above. Against that backdrop, Plaintiff's relationship with HLF and counsel, HLF's role in developing her claims, and who actually submitted the webforms bearing her information are central to the merits of her claims and warrant further investigation, including whether sanctions or other relief may be appropriate.

Even before her death, Plaintiff could not fairly and adequately represent absent class members while the legitimacy of her own claims and the circumstances surrounding their prosecution were subject to such substantial and individualized questions. Her death compounds the problem. Washington cannot explain Plaintiff's conduct, supply her missing testimony, or cure the resulting adequacy and typicality problems.

Dismissing the class claims would not prejudice putative class members. No class has been certified, and putative members' individual claims have been tolled during this action. *See Baker v. Aegis Wholesale Corp.*, No. 4:09-cv-05280, 2010 WL 2853915, at *4 (N.D. Cal. July 21, 2010); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985); *cf. Bailey v. Cumberland Cas. &*

*Sur. Co.*, 180 F. App'x 862, 865 (11th Cir. 2006) (putative class members not prejudiced by denial of substitution because their claims were tolled until dismissal).

The prejudice falls on Sunrun, which has already incurred substantial fees defending these claims and, because of Plaintiff's death, has lost the opportunity to complete critical discovery. Sunrun's examination of Plaintiff was cut short just as it reached her daughters' possible role in submitting the webforms, HLF's access to her accounts, the basis for allegations copied from her *MPX* complaint, and her permission to be contacted. (*See, e.g.*, Strickland Tr. at 48:11–15, 146:12–15, 176:2–15.) Those issues bear directly on Sunrun's defenses, the circumstances surrounding Plaintiff's claims, class certification, and whether further relief is warranted.

Washington cannot fill that evidentiary void. Plaintiff was the witness with personal knowledge of the calls, the alleged stop requests for which no record exists, the webform submissions, and her relationship and communications with counsel. Allowing Washington to pursue class claims would thus require Sunrun to continue defending claims whose factual foundation is subject to serious question while permanently depriving it of the opportunity to examine the person whose conduct is at the center of those questions. That would materially prejudice Sunrun while serving no legitimate interest of an uncertified class.

**a. Washington Cannot Satisfy Typicality**

Because this class was not certified prior to Plaintiff's death, all claims that became moot at Plaintiff's death, or were otherwise extinguished, cannot be pursued on a class basis. *See Kennerly*, 721 F.2d at 1260 ("The mooting of Kennerly's individual claim for injunctive relief means that the appellant, Robert Kennerly, is not in a position to seek class action certification as a class representative."); *Hannabury*, 174 F. Supp. 3d at 776–77 (estate lacks ability to seek injunctive relief on TCPA claim unlike putative class). Washington is therefore not typical of the putative class, whose members presumably could still seek relief unavailable to the estate, including injunctive relief and, where warranted, trebled statutory damages.

In *Hanon v. Dataproducts Corp.*, the Ninth Circuit explained that typicality fails where "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it," such that "it is predictable that a major focus of the litigation will be on a

defense unique to him." 976 F.2d 497, 508–09 (9th Cir. 1992). Applying *Hanon* in a TCPA case turning on website consent, the court in *Berman v. Freedom Financial Network, LLC* held that the named plaintiff was neither typical nor adequate because "litigation of the express consent and mandatory arbitration defenses applicable to absent class members threatens to overwhelm other issues in the litigation." 400 F. Supp. 3d 964, 987 (N.D. Cal. 2019).

Consent and/or permission to be contacted are the central issues here, and Plaintiff herself put it at the center of her claims by alleging that she never visited the website and never directed anyone else to do so. (ECF No. 54 ¶¶ 39–40.) Washington is not a neutral bystander to that issue. The calls followed webform submissions containing Plaintiff's information authorizing Solar America to place the calls. When Plaintiff was confronted with these records, she pointed to her daughters. When asked about a webform's Samsung Galaxy device signature, she responded: "My daughters' is all Samsung. Both of my daughters." (Strickland Tr. at 161:21–24.) When asked about submissions from Jacksonville-based IP addresses, she said: "I will ask my children. My oldest daughter lives in Jacksonville. She's been in and out of Jacksonville since 2016." (*Id.* at 167:22–24; *see also id.* at 176:2–9, 177:2–9.) Washington indeed lives in the Jacksonville area. (ECF No. 94-1 ¶ 3.) Plaintiff then testified, of Washington, "I haven't talked to her, but I'm going to find out if she solicited any information using mine." (Strickland Tr. at 176:5–7.)

If a family member submitted the forms, that submission supplies sufficient permission to call; if a family member submitted them without authority, the submitter's conduct, and the good-faith reliance on it, will be central to liability and to any claim of willfulness. Either way, whether Washington submitted the forms will be a central fact question in this case, and Washington will be a fact witness against her own representative claim. That issue is unique to Washington and threatens to become the focus of the litigation. *Hanon*, 976 F.2d at 508–09.

**b. Washington Cannot Satisfy Adequacy**

Adequacy turns on whether the representative plaintiffs and their counsel have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1999). Washington fails both considerations.

The SAC pleads both elements as facts personal to Plaintiff: that "her interests do not conflict with the class's interests," that she "will fairly and adequately protect the class's interests," and that "she is represented by counsel skilled and experienced in litigating class actions." (ECF No. 54 ¶ 58.) Plaintiff's counsel repeated that "Sherry Strickland is an adequate class representative, has no conflict with the proposed class, and is committed to seeing this matter through." (ECF No. 56 at 11.) None of those allegations can be transferred to Washington, and the record shows none of them held up even as to Plaintiff.

First, Washington has a personal conflict with the class. If Washington submitted any of the webforms at issue in this case, she has a personal incentive to deny or minimize her role and to resist discovery into her own devices, accounts, and internet activity. That interest is hers alone, and it is not aligned with absent class members, whose claims do not depend on her credibility. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) ("[U]ncovering conflicts of interest between the named parties and the class they seek to represent is a critical purpose of the adequacy inquiry"); *Hanon*, 976 F.2d at 508 (purpose of typicality inquiry "is to assure that the interest of the named representative aligns with the interests of the class").

Second, Washington lacks knowledge of, or involvement in, the underlying facts or litigation of her mother's claims. Plaintiff testified that she had not talked with anyone other than her lawyers about this lawsuit, (Strickland Tr. at 96:25–97:6); that she did not know Washington's address or where she works (*id.* at 177:2–6, 180:25–181:3); and that the two "fell out" (*id.* at 178:18–19).

The record also indicates that this litigation has been driven by counsel. Plaintiff herself could not describe her role as class representative except to say, "I go on the basis of my attorney's suggestion." (*Id.* at 77:4–11.) She testified that a settlement offer was "rejected because I didn't feel like it was in the best interest of the class," but when asked to explain what she meant, answered: "I cannot. I cannot." (*Id.* at 59:9–12, 60:18.) She did not know what court the case was filed in or that it was pending in federal court in California, (*id.* at 97:21–98:15); and could not say what portion of the settlement offer she would have received as opposed to her lawyers, (*id.* at 98:20–99:11). The SAC alleges that "[e]ach call that was answered started with a click, pause and a delay," (ECF 54 ¶ 34), yet Plaintiff admitted that she "never personally answered a call from Sunrun," (Graham Decl.,

Ex. 3, Pl.'s Resp. to RFA No. 27), even as she insisted at deposition that she had spoken with Sunrun and called it twice, (Strickland Tr. at 138:6–16, 147:13–18), and she did not know whether that allegation was simply carried over from her *MPX* complaint, where it appears verbatim, (*id.* at 144:17–145:7; *see also id.* at 140:22–25 (no specific recollection of speaking with anyone from or about Sunrun).) If the original plaintiff could not supervise counsel, a substitute who lacks knowledge about the claims asserted surely cannot. *See May v. Gladstone*, 562 F. Supp. 3d 709, 713 (C.D. Cal. 2021) ("May's apparent lack of interest in his responsibilities and the goals of the litigation is troubling").

Courts deny estate representative class-representative status on similar records. In *Borteanu v. Nikola Corp.*, the court found an estate representative inadequate where the estate witness appeared to have "little familiarity" with the litigation, could not say who was making decisions for the estate, and the circumstances suggested "lawyer-driven litigation"; the court concluded that the estate was "merely lending a name to a suit controlled by the class attorney." 348 F.R.D. 239, 253–54 (D. Ariz. 2025) ("courts considering a motion for class certification should ensure a lead plaintiff is adequately capable of monitoring class counsel and not simply lending their name to a suit controlled entirely by the class attorney.") (citation modified). It distinguished a case in which the executor had "been involved in the litigation since its inception." *Id.* at 254; *see also Pierre*, 2017 WL 11681686, at *2 (denying substitution where co-executors were "otherwise unconnected to the lawsuits").

**B. Any Substitution Should Be Limited and Conditioned, with Class Discovery Stayed Pending Summary Judgment**

Courts routinely pair substitution with targeted discovery. For example, in *Margulies v. Tri-County Metropolitan Transportation District of Oregon*, the court granted substitution of a proposed class representative after the discovery cutoff and extended discovery to allow the defendant to take discovery, including deposition, related to the substitute's ability to serve as a class representative. No. 3:13-cv-00475, 2014 WL 12918938, at *4 (D. Or. Dec. 23, 2014). Discovery into the proposed substitute's own qualifications, including knowledge of the lawsuit, involvement before the original plaintiff's death, communications with counsel, and capacity to represent the class, is a legitimate

subject of pre-class certification-related discovery if substitution is granted. *Gravelle v. Kiander*, No. 2:13-cv-01911, 2016 WL 194741, at *5 (W.D. Wash. Jan. 15, 2016) (ordering discovery into plaintiff's death and representative of decedent's estate even where discovery was closed). Sunrun also intends to investigate the legitimacy of Plaintiff's claims and the role of counsel, including HLF, in order to seek recovery of its attorneys' fees and costs. As in *Wilson*, such inquiry is warranted to determine whether resources have been, and will be, misused.

All case deadlines have been stayed pending further order. (ECF No. 95.) Because Rule 25(a)(1) is discretionary, the Court may, and should, condition any substitution on Sunrun's ability to depose Washington and to take targeted discovery into her knowledge of the facts of this case, whether she or another family member submitted the webforms at issue and with what authority, and the involvement of HLF and other counsel in the origination of this action, before any class proceedings occur. The individual TCPA claims turn on the discrete consent and/or permission issue, which is well suited for early resolution and would dispose of this entire action.

## V. CONCLUSION

Sunrun respectfully requests that the Court deny the Motion as to the FTSA claims, treble damages, injunctive relief, and the putative class allegations, and that any substitution be limited to Plaintiff's surviving individual TCPA claims for statutory damages and as conditioned herein.

Dated: November 19, 2026

Respectfully submitted,

*/s/ Glenn T. Graham*

Lauri A. Mazzuchetti (*pro hac vice*)
Glenn T. Graham (SBN 338995)
Emily E. Clark (*pro hac vice*)
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms, Suite 340
Madison, NJ 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
ggraham@kelleydrye.com
eclark@kelleydrye.com

*Attorneys for Defendant Sunrun Inc.*